IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

WALID R. DAOU                           §
                                        §
        Plaintiff,                      §
                                        §
v.                                      §        Civil Action No. 3:11-CV-2686-N
                                        §
BANK OF NEW YORK MELLON f/k/a           §
THE BANK OF NEW YORK, *et al.*,         §
                                        §
        Defendants.                     §

## ORDER

This Order addresses Plaintiff Walid R. Daou's motion to remand [6] and Defendants'[1] motion to dismiss [12]. The Court denies Daou's motion to remand because Daou's petition meets the diversity requirements for the Court to exercise jurisdiction. The Court grants in part and denies in part Defendants' motion to dismiss. Daou fails to state a claim for breach of contract; anticipatory breach of contract; unreasonable collection efforts; certain violations of the Texas Debt Collection Practices Act ("DCPA"), TEX. FIN. CODE § 392.001, *et seq.*; negligent misrepresentation; an order of accounting; or declaratory judgment, and the Court dismisses those claims. However, Daou states a claim under section 392.304(a)(19) of DCPA.

---

[1]Defendants are: the Bank of New York Mellon f/k/a The Bank of New York, as Trustee for the Benefit of the Certificate Holders of the CWALT, Inc. Alternative Loan Trust 2004-5CB Mortgage Pass Through Certificates Series 2004-5CB ("New York Mellon"), BAC Home Loans Servicing, L.P. ("BAC"), and Bank of America, N.A. as a named party and as successor by merger to BAC Home Loans Servicing, L.P. ("BoA").

## I. ORIGINS OF THE CASE

This case concerns real property and a related mortgage.[2]  On or around August 3, 2002, Daou purchased the property.  Pl.'s First Am. Compl. ¶ 11 [7].  He refinanced the property on or around February 3, 2004 by executing a note and deed of trust with America's Wholesale Lender.  *Id.*  America's Wholesale Lender subsequently assigned the note and deed to Defendant New York Mellon, for whom Defendants BoA and BAC acted – and continue to act – as the servicers of Daou's note.  Defs.' Mot. Dismiss 2; Pl.'s First Am. Compl. ¶ 11.

On October 5, 2010, Daou retained the services of a law firm, the Law Office of Brett Margolin, P.C. ("Margolin"), in Florida to help him secure a loan modification.  Pl.'s First Am. Compl. ¶ 13.  Daou completed a loan modification application and submitted "the requested documents" to Margolin.  Margolin told Daou that he would have to be three months behind on his loan payments in order for BoA to consider his modification, so Daou stopped making loan payments.  *Id.*

Daou subsequently received a letter dated February 28, 2011 from BAC acknowledging Daou's interest in the federal government's Home Affordable Modification Program ("HAMP").  *Id.* ¶ 14.  The letter informed Daou that he needed to submit additional financial information by March 30, 2011 and stated that "no foreclosure sale will be conducted and you will not lose your home during the [HAMP] evaluation."  Daou submitted all requested information to Margolin on March 7, 2011.  *Id.*

---

[2]For purposes of this motion, the Court accepts as true Daou's factual allegations.

After some back-and-forth between Daou, Margolin, and BAC,[3] Daou received a letter from BAC acknowledging that it had received his financial documents for the HAMP program and that his loan modification was under review. *Id.* ¶ 16. Thereafter, Daou received another letter from BAC, dated April 23, 2011, denying his HAMP modification but informing him that BAC was reviewing Daou's application to determine if he had other options available, such as a different loan modification. The letter also "stated that if a foreclosure sale is currently on hold, the hold [will] continue to remain in effect while BAC consider[s] [Daou] for other foreclosure avoidance programs." Daou contacted his lawyer at Margolin, who told him not to worry because seventy-percent of people do not qualify for HAMP, that he had spoken to BoA, and that BoA was reviewing Daou's application for an in-house modification. *Id.*

Margolin phoned Daou on May 5, 2011 to inform Daou that he had spoken to "Becky" at BoA, who stated that BoA was going to do a traditional loan modification. *Id.* ¶ 17. Margolin asked for more financial information from Daou, which Daou provided. A BoA representative subsequently phoned Daou and told him that BoA had not received certain financial documentation from Margolin. Daou attempted to contact Margolin, who eventually responded that he had been on vacation and had been off work for three weeks due to an injury, so he hadn't sent Daou's information to BoA. However, Margolin said that he had left a message with Becky "about the situation." *Id.* Later that summer, Margolin

---

[3]This included a letter from BAC dated April 1, 2011 seeking additional financial information and again stating that "no foreclosure sale will be conducted and you will not lose your home during the [HAMP] evaluation." Pl.'s First Am. Compl. ¶ 15.

requested more financial documentation from Daou, and Daou sent his lawyer the information on August 4-6, 2011.  *Id.* ¶ 18.

At or near the end of August 2011, Daou recieved a letter from Recontrust Company, N.A., dated August 24, 2011, and a notice of substitute trustee's sale.  *Id.* ¶ 18.[4]  Daou sent the letter and notice to Margolin, who never responded.  Daou called Margolin, and someone informed Daou that Margolin was no longer handling Daou's case.  When Daou phoned another lawyer at Margolin, that lawyer told him to hire another attorney and that Margolin could no longer assist Daou with his case.  *Id.*

On September 7, 2011, Daou called BoA and spoke to "Josh," who explained that Daou was "better off dealing with BoA directly."  *Id.* ¶ 19, 23.  Josh told Daou that he qualified for a loan modification, to fax over additional financial information to BoA, and "not to worry about the foreclosure because [BoA] does not foreclose while a loan modification is under review."  *Id.*  Daou sent his financial information to Josh on September 16, 2011 in a letter where he also "accepted dealing with Josh directly so Josh could choose the appropriate loan modification for [Daou]."  *Id.* ¶ 19.  Daou's letter further stated that Daou "understood Josh would be getting back to [Daou] shortly to tell [Daou] his new payment amount [so] [Daou] could start making mortgage payments again" and that "if [Daou's] letter did not accurately reflect their agreement, to contact him within five business

---

[4]The letter stated that the foreclosure sale was scheduled for October 4, 2011.  Pl.'s First Am. Compl. ¶ 18.

day[s]." Daou never heard from Josh again. Daou believes that New York Mellon still intends to foreclose, though no sale has yet taken place. *Id.*

On September 29, 2011, Daou filed suit in state court seeking (1) a temporary restraining order enjoining Defendants from foreclosing on his property, (2) a permanent injunction following trial, (3) a declaratory judgment regarding Defendants' standing to foreclose and Defendants' alleged breach of the deed of trust, (4) an order of accounting, (5) an order setting aside the acceleration of his note and to reinstate his note, (6) damages, and (7) attorneys' fees. Pl.'s Original Pet., "Prayer," at pp. 19-21 [1-1]. To support this relief, he alleged causes of action for breach of contract; anticipatory breach of contract; unreasonable collection efforts; certain violations of DCPA; negligent misrepresentation and gross negligence; an order of accounting; and a declaratory judgment. *Id.* ¶¶ 23-48.

Daou amended his complaint on November 8, 2011. He now alleges causes of action for breach of contract, anticipatory breach of contract, unreasonable collection efforts, "malice,"[5] certain violations of DCPA, negligent misrepresentation, an order of accounting, and a declaratory judgment. Pl.'s First Am. Compl. ¶¶ 22-51.[6] He seeks (1) a declaratory judgment that "the acceleration was wrongful," (2) damages, (3) attorneys' fees, (4) an order requesting Defendants to render an accounting pursuant to the Real Estate Settlement and

---

[5]*See infra* note 17.

[6]The Court only addresses those of Daou's claims that he listed as causes of action in his complaint.

ORDER – PAGE 5

Procedures Act ("RESPA"), 12 U.S.C. § 2605(e), and (5) that the Court set aside acceleration of the note and reinstate it. *Id.*, "Prayer," pp. 17-18.

## II. THE COURT HAS REMOVAL JURISDICTION

Defendants removed the action to this Court on October 12, 2011, alleging jurisdiction based on the parties' diversity of citizenship under 28 U.S.C. §§ 1441(a), 1332(a). Defs.' Notice Removal 1-2 [1]. Defendants claim that (1) all Defendants are diverse from Daou pursuant to section 1332(a)(1), and (2) the amount in controversy is $160,000 – the fair market value of the property – pursuant to section 1331(a). *Id.* at 2-3. In support of their position, they attach an appraisal of Daou's property from the Dallas County Appraisal District valuing the property at $160,000.

Daou does not dispute that the parties are diverse from one another but instead moves to remand because the amount in controversy does not exceed the $75,000 threshold in 28 U.S.C. § 1332(a).

### A. General Remand Standard

A defendant may remove a state court suit only if the action originally could have been brought in federal court. 28 U.S.C. § 1441(a).[7] The removing defendant bears the burden of establishing federal jurisdiction. *E.g., Winters v. Diamond Shamrock Chem. Co.*,

---

[7]The Court notes that on December 7, 2011, the President signed into law the Federal Courts Jurisdiction and Venue Clarification Act of 2011 ("JVCA") which amended Chapter 28 of the United States Code. *See* 28 U.S.C. § 1, *et seq.* However, the Court will cite to, and apply, Chapter 28 as it existed at the time Defendants removed and Daou moved to remand because the amendments apply only to cases commenced after January 6, 2012. *See* JVCA, Pub. L. No. 112-63, § 205.

149 F.3d 387, 397 (5th Cir. 1998). The Court must determine whether jurisdiction exists by considering the claims in the plaintiff's state court petition as it existed at the time of removal.[8] *E.g., Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). However, "[b]ecause removal raises significant federalism concerns, the removal statute is strictly construed 'and any doubt as to the propriety of removal should be resolved in favor of remand.'" *Gutierrez v. Flores*, 543 F.3d 248, 251 (5th Cir. 2008) (quoting *In re Hot-Hed, Inc.*, 477 F.3d 320, 323 (5th Cir. 2007)).

A district court has removal jurisdiction based on diversity where the amount in controversy is over $75,000. 28 U.S.C. §§ 1441(a), 1332(a). When a plaintiff does not allege the amount in controversy in his or her complaint, the defendant must prove by a preponderance of the evidence that the amount in controversy is greater than $75,000 either by (1) "demonstrating that it is facially apparent [from plaintiff's complaint] that the claims are likely above $75,000," or (2) "by setting forth the facts in controversy" either on the removal petition or through summary judgment-type evidence. *Allen v. R&H Oil & Gas Co.*, 63 F.3d 1326, 1335-36 (5th Cir. 1995); *see also, e.g., Garcia v. Koch Oil Co.*, 351 F.3d 636, 638-39 (5th Cir. 2003).

When a plaintiff requests either declaratory or injunctive relief, the jurisdictional amount in controversy is "the value of the right to be protected or the extent of the injury to be prevented." *Hartford Ins. Group v. Lou-Con Inc.*, 293 F.3d 908, 910 (5th Cir. 2002). And

---

[8]Accordingly, the Court will cite to, and apply the law to, Daou's original state court petition in this section.

ORDER – PAGE 7

"when the validity of a contract or a right to property is called into question in its entirety, the value of the property controls the amount in controversy." *Nationstar Mortg. LLC v. Knox*, 351 F. App'x 844, 848 (5th Cir. 2009) (quoting *Waller v. Prof'l Ins. Corp.*, 296 F.2d 545, 547-48 (5th Cir. 1961) (unpub.)).

### B. Defendants Have Met the Jurisdictional Amount in Controversy Requirement

Daou argues that the Court should not use the value of the property as the jurisdictional amount in controversy because he does not seek the value of the property – that is, his petition does not contain any allegation about the validity of the note or deed; rather, he alleges that Defendants failed to comply with the terms of the note and deed. Pl.'s Mot. Remand 3. Daou relies on *Elsner v. Bank of New York Mellon* for the proposition that, where the object of a plaintiff's action is to secure a long-term loan modification that would allow the homeowner to continue owning the property and to obtain a money judgment to compensate the plaintiff when a defendant "purports to offer loan modification services but do[es] not actually provide them," the amount in controversy is not necessarily equal to the value of the property. 2011 WL 2650567, at *4 (N.D. Tex. 2011) (McBryde, J.). He also cites another opinion from Judge McBryde, *Ballew v. America's Servicing Co.*, 2011 WL 880135, at *3-5 (N.D. Tex. 2011) (McBryde, J.), for the same proposition. Pl.'s Reply 2-3 [11].

However, the Court need not analyze the object of Daou's action or whether Judge McBryde's reasoning applies here. Regardless whether Daou's original petition contained any allegation about the validity of the deed, Daou's original petition plainly requested a

ORDER – PAGE 8

permanent injunction restraining Defendants from foreclosing on the property. Pl.'s Pet.,

"Prayer," at p. 20. Numerous cases in this district have held that, when a plaintiff seeks to

enjoin a defendant permanently from foreclosing, the amount in controversy equals the fair

market value of the property. *E.g.*, *Alsobrook v. GMAC Mortg. LLC*, 2012 WL 1643220, at

*2 (N.D. Tex. 2012) (Stickney, Mag. J.) (collecting cases), *accepted by* 2012 WL 1655765,

at *1 (N.D. Tex. 2012) (Lynn, J.); *McDonald v. Deutsche Bank Nat'l Trust Co.*, 2011 WL

6396628, at *2 (N.D. Tex. 2011) (Boyle, J.); *see also Martinez v. BAC Home Loans

Servicing*, 777 F. Supp. 2d 1039, 1051 (W.D. Tex. 2010). They reason that "given that

[plaintiff] seeks to enjoin sale of her land, the Property is properly understood as the object

of litigation" because "an injunction calls into question the right to the property in its

entirety." *McDonald*, 2011 WL 6396628, at *2. The Court agrees with this reasoning.

Accordingly, because Defendants have submitted competent evidence from the Dallas

County Appraisal District – the validity of which Daou does not contest – appraising the fair

market value of the property at $160,000, the Court retains jurisdiction of the case under

sections 1441 and 1332(a). *See, e.g.*, *Dillard Family Trust v. Chase Home Fin., LLC*, 2011

WL 6747416, at *4 (N.D. Tex. 2011) (Lindsay, J.) (relying on defendant's appraisal evidence

to determine value of property in declaratory judgment context); *Hayward v. Chase Home

Fin., LLC*, 2011 WL 2881298, at *4-5 (N.D. Tex. 2011) (Fish, J.) (same).

### III. THE COURT GRANTS IN PART AND DENIES IN PART DEFENDANTS' MOTION TO DISMISS

Defendants move to dismiss Daou's current claims for breach of contract and anticipatory breach, unreasonable collection efforts, various violations of DCPA, negligent misrepresentation, an order of accounting, and a declaratory judgment, arguing that Daou fails to state claims which would entitle him to relief under each cause of action.[9] The Court addresses each of Daou's claims in turn.

### A. Motion to Dismiss Standard[10]

To decide a Rule 12(b)(6) motion to dismiss, the Court must determine whether the plaintiff has asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). According to the Supreme Court, a viable complaint must include "enough facts to state a claim to relief that is plausible on its face," i.e., "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim or element]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009). A plaintiff is required to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief

---

[9]Defendants' motion to dismiss is directed at Daou's First Amended Complaint, which Daou properly filed under Federal Rule of Civil Procedure 15(a)(1)(B). Accordingly, the Court will cite to, and apply the law to, Daou's First Amended Complaint in this section.

[10]Defendants claim that Daou's negligent misrepresentation claim fails to meet the heightened pleading requirements of Rule 9(b). Defs.' Mot. Dismiss 4-5. However, because the Court finds that Daou's negligent misrepresentation claim cannot overcome a motion to dismiss under the more lenient pleading requirements of Rule 12(b)(6), the Court need not decide whether Daou's negligent misrepresentation claim sounds in fraud and therefore requires him to plead it with particularity under Rule 9(b).

above the speculative level on the assumption that all the allegations in the complaint are true

(even if doubtful in fact)." *Id.* (internal citations omitted).

As the Supreme Court has observed:

> Two working principles underlie our decision in *Twombly*. First, the
> tenet that a court must accept as true all of the allegations contained in a
> complaint is inapplicable to legal conclusions. Threadbare recitals of the
> elements of a cause of action, supported by mere conclusory statements, do not
> suffice. [*Twombly*, 550 U.S.] at 555 (Although for the purposes of a motion
> to dismiss we must take all of the factual allegations in the complaint as true,
> we "are not bound to accept as true a legal conclusion couched as a factual
> allegation" (internal quotation marks omitted)). Rule 8 marks a notable and
> generous departure from the hyper-technical, code-pleading regime of a prior
> era, but it does not unlock the doors of discovery for a plaintiff armed with
> nothing more than conclusions. Second, only a complaint that states a
> plausible claim for relief survives a motion to dismiss. *Id.* at 556.
> Determining whether a complaint states a plausible claim for relief will, as the
> Court of Appeals observed, be a context-specific task that requires the
> reviewing court to draw on its judicial experience and common sense. [*Iqbal
> v. Hasty*,] 490 F.3d 143, 157-158 [(2d Cir. 2007)]. But where the well-pleaded
> facts do not permit the court to infer more than the mere possibility of
> misconduct, the complaint has alleged – but it has not "show[n]" – "that the
> pleader is entitled to relief." Fᴇᴅ. R. Cɪᴠ. P. 8(a)(2).
>
> In keeping with these principles[,] a court considering a motion to
> dismiss can choose to begin by identifying pleadings that, because they are no
> more than conclusions, are not entitled to the assumption of truth. While legal
> conclusions can provide the framework of a complaint, they must be supported
> by factual allegations. When there are well-pleaded factual allegations, a court
> should assume their veracity and then determine whether they plausibly give
> rise to an entitlement to relief.

*Iqbal*, 129 S. Ct. at 1949-50.

In ruling on a Rule 12(b)(6) motion then, a court generally limits its review to the face

of the pleadings, accepting as true all well-pleaded facts and viewing them in the light most

favorable to the plaintiff. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). However,

a court may also consider certain documents outside of the pleadings if they fall within four limited categories. First, "[a] court is permitted . . . to rely on 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). Second, "[a] written document that is attached to a complaint as an exhibit is considered part of the complaint and may be considered in a 12(b)(6) dismissal proceeding." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir.2007) (citation omitted). In addition, a "court may consider documents attached to a motion to dismiss that 'are referred to in the plaintiff's complaint and are central to the plaintiff's claim.'"[11] *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir.2010) (quoting *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir.2003)). And finally, "[i]n deciding a 12(b)(6) motion to dismiss, a court may permissibly refer to matters of public record." *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994) (citation omitted); *see also, e.g.*, *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (stating, in upholding district court's dismissal pursuant to Rule 12(b)(6), that "[t]he district court took appropriate judicial notice of publically available documents and transcripts produced by the [Food and Drug Administration], which were matters of public record directly relevant to the issue at hand").

### B. Daou Fails to State a Claim For Breach of Contract

---

[11]In this case, that includes the note, *see* Defs.' App. to Defs.' Mot. Dismiss, Note, pp. 1-2 [12-2], and the deed of trust, *see id.*, Deed of Trust, pp. 3-17 [12-2].

Daou asserts a number of bases for his breach of contract claim, and the Court considers each separately.

**1. *Daou Did Not Perform Under the Deed of Trust.*** – Daou asserts, somewhat conclusorily, that Defendants violated Texas Property Code § 51.002 and breached the deed of trust contract. Pl.'s First Am. Compl. ¶ 23. Daou admits that Defendants sent him a notice of intent to foreclose but argues (1) that Defendants told him that they do not foreclose while a loan modification is under review and (2) that Defendants never gave him a right to cure and reinstate his note. *Id.* Under Texas law, Plaintiffs must prove the following elements to prevail on a breach of contract claim: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Am. Gen. Life Ins. Co. v. Kirsch*, 378 F. App'x 379, 383 (5th Cir. 2010) (citing *Smith Int'l, Inc. v. Eagle Group, LLC*, 490 F.3d 380, 387 (5th Cir. 2007)); *see also, e.g.*, *Watson v. Citimortgage* ("*Watson II*"), 2012 WL 381205, at *4 (E.D. Tex. 2012); *Woods v. Bank of Am., N.A.*, 2012 WL 1344343, at *3 (N.D. Tex. 2012) (Boyle, J.).

The Court interprets Daou's argument to be[12]: (1) the deed of trust contains a provision that subjects the parties to "applicable law," which includes the Texas Property Code and other Texas state law; (2) Texas Property Code § 51.002(d) requires a mortgage servicer to "serve a debtor in default under a deed of trust . . . with written notice by certified

---

[12]Daou points to no provisions in the deed of trust, so the Court is left to guess at his breach theory.

ORDER – PAGE 13

mail stating that the debtor is in default . . . and giving the debtor at least 20 days to cure the default before notice of sale can be given;" (3) Daou points to some authority in Texas jurisprudence requiring a creditor to demand payment for past due installments and give a mortgagor/debtor an "opportunity to discharge the delinquent indebtedness before accelerating," *Diversified, Inc. v. Walker*, 702 S.W.2d 717, 719 n.1 (Tex. App. – Hous. [1st Dist.] 1985, writ ref'd n.r.e.);[13] (3) Defendants never gave Daou the opportunity to discharge his debt,[14] (4) because the deed subjects the parties to state law, Defendants' failure to give notice constitutes a breach of the contract.[15]

However, the Court need not consider whether Defendants breached the deed under the third element of a breach of contract claim because Daou cannot establish the second element of a breach of contract claim: that he performed or tendered performance. *See Kirsch*, 378 F. App'x at 383. "An essential element of a breach-of-contract claim is 'performance or tendered performance by the plaintiff.'" *Obuekwe*, 2012 WL 1388017, at

---

[13]The Court does not opine on the correctness of Daou's assertion regarding the *Diversified* case.

[14]Daou pleads that Defendants did not demand past due installments and give him an opportunity to cure his default before accelerating. Pl.'s First Am. Compl. ¶ 25. Though the Court cannot – and does not – consider the document on Defendants' motion to dismiss, the Court notes that Defendants attached a notice of acceleration and trustee's sale dated October 18, 2010, which advised Daou that he had until November 17, 2010 to cure his default or BoA would accelerate his indebtedness. *See* Defs.' App. to Defs.' Mot. Dismiss, Notice of Default, pp. 18-22 [12-2].

[15]Daou argues that this conduct is "unconscionable." Pl.'s First Am. Compl. ¶ 25. However, he provides no support for this statement, and the Court does not address Daou's "unconscionable" assertion.

*5 (N.D. Tex. 2012) (Means, J.) (quoting *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009)).  Daou's complaint reveals that he defaulted on his loan.  *See* Pl.'s First Am. Compl. ¶ 13 ("Plaintiff stopped making payments").  Daou, however, "alleges that even if he did breach the contract and was in default, he was in default because Defendants made it impossible for him to perform the contract," and, therefore, his nonperformance is excused. *Woods*, 2012 WL 1344343, at *3; *see* Pl.'s First Am. Compl. ¶ 25.  "It is well established [in Texas] that a party's nonperformance of a contract will be excused when that party's performance is prevented by the other party."  *Navarez v. Willshire Credit Corp.*, 757 F. Supp. 2d 621, 629 (N.D. Tex. 2010) (Lynn, J.) (citing *Dorsett v. Cross*, 106 S.W.3d 213, 217 (Tex. App. – Hous. [1st Dist.] 2003, pet denied) and *Erickson v. Rocco*, 433 S.W.2d 746, 751-52 (Tex. App. – Hous. [14th Dist.] 1968, writ ref'd n.r.e.)).  But Daou does not plead facts demonstrating how Defendants prevented his performance.[16]  Rather, he states that, "in accordance with . . . legal advice" from his lawyer at Margolin, he stopped making payments in 2010.  Pl.'s First Am. Compl. ¶ 13.  And "[n]owhere does [Daou] allege that he tendered payment under the Deed of Trust and Defendants refused to accept or otherwise made it impossible for [him] to perform."  *Woods*, 2012 WL 1344343, at *3 (citing *Burnett v. Wells Fargo Bank, N.A.*, 2011 WL 676955, at *5 (E.D. Tex.2011).  Because Daou did not perform under the contract and because he provided no facts demonstrating how Defendants prevented his performance, Daou's breach of contract claim fails.  *See, e.g.*, *id.* at *3

---

[16]He states: "Defendants' actions . . . prevented [Daou] from performing the contract." Pl.'s First Am. Compl. ¶ 25.

ORDER – PAGE 15

(rejecting plaintiff's nonperformance argument where plaintiff alleged that defendants made it impossible for him to perform because they failed to communicate with him regarding his loan and modification); *Navarez*, 757 F. Supp. 2d at 629 (rejecting plaintiff's argument that defendants' actions made it impossible for him to perform under mortgage contract where plaintiff repeatedly claimed that the cause of his default was a violent attack at his home, and granting defendants summary judgment on plaintiff's breach of contract claim); *cf. Rey v. Acosta*, 860 S.W.2d 654, 658 (Tex. App. – El Paso 1993, no writ) (implying that a defendant deprives a plaintiff of "opportunity to pay" where the defendant refuses the plaintiff's tender of late payments by stating that "[a] creditor must give the debtor an opportunity to pay the past due installments before acceleration of the entire indebtedness; refusal of payments necessarily negates such an opportunity.")   Nonetheless, the Court considers Daou's remaining theories of breach.

### 2. There is No Requirement of Good Faith and Fair Dealing in the Deed of Trust Contract.

– Daou claims that, under Texas law, "the requirement of good faith and fair dealing is included in the performance of every contract" and that Defendants breached this general duty by delaying and misleading Daou "to the point of foreclosure." Pl.'s First Am. Compl. ¶ 24.   However, separate from any specific duty of care contained in the parties' contract, courts have held that mortgagors do not owe a duty of good faith or fair dealing to mortgagees.  *E.g.*, *Woods*, 2012 WL 1344343, at *4; *Obekwe*, 2012 WL 1388017, at *5; *Wilkerson v. Citimortgage, Inc.*, 2011 WL 6937382, at *3 (N.D. Tex. 2011) (Toliver, Mag. J.) ("[A]s a matter of law, the Texas U.C.C.'s duty of good faith and fair dealing does not

apply to the lender-borrower relationship."); *see also, e.g.*, *Setzer v. Richards*, 2012 WL 32943, at *5-6 (W.D. Tex. 2012) ("Texas courts have rejected the existence of any special relationship between a mortgagor and a mortgagee which creates an independent common law duty of good faith and fair dealing.") (collecting Texas cases); *King v. Wells Fargo Bank, N.A.*, 2012 WL 1205163, at *2 (N.D. Tex. 2012) (Kaplan, Mag. J.) (collecting cases). Daou does not plead facts showing a specific duty in the parties' contract. Accordingly, his duty of good faith argument fails.

### 3. Defendants Did Not "Waive" Their Right to Foreclose. –

Daou asserts that Defendants waived acceleration of the indebtedness and their foreclosure rights because Defendants behaved "inconsistent[ly] or inequitab[ly]" with regard to the note. Pl.'s First Am. Compl. ¶ 25. Under Texas law, "[w]aiver is the intentional relinquishment of a right actually known, or intentional conduct inconsistent with claiming that right." *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008); *see also, e.g.*, *Watson II*, 2012 WL 381205, at *5. To prove waiver, Plaintiffs must show "(1) an existing right, benefit, or advantage held by a party; (2) the party's actual knowledge of its existence; [and] (3) the party's actual intent to relinquish the right, or intentional conduct inconsistent with the right." *Ulico Cas. Co.*, 262 S.W.3d at 778. As the Texas Court of Appeals has counseled;

> Intent is the key element in establishing waiver. The law on waiver distinguishes between a showing of intent by actual renunciation and a showing of intent based on inference. In the latter situation, it is the burden of the party who is to benefit by a showing of waiver to produce conclusive evidence that the opposite party unequivocally manifested its intent to no longer assert its claim. This is a particularly onerous burden.

ORDER – PAGE 17

*RM Crowe Prop. Servs. Co. v. Strategic Energy, L.L.C.*, 348 S.W.3d 444, 449-50 (Tex. App. – Dall. 2011, no pet.) (quoting *G.H. Bass & Co. v. Dalsan Prop.-Abeline*, 885 S.W.2d 572, 577 (Tex. App. – Dall. 1994, no writ)) (brackets omitted).

Accordingly, to establish that Defendants waived their right to accelerate the indebtedness and foreclose, Daou must allege facts demonstrating that Defendants "unequivocally manifested [their] intent" not to foreclose or accelerate. *RM Crowe Prop. Servs. Co.*, 348 S.W.3d at 449. In his complaint, Daou alleges that (1) Defendants represented that "no foreclosure sale will be conducted and you will not lose your home during the [HAMP] evaluation" Pl.'s First Am. Compl. ¶ 14, (2) Defendants sent a letter after denying Daou for HAMP stating that "if a foreclosure sale is currently on hold, the hold [will] continue to remain in effect while BAC consider[s] [Daou] for other foreclosure avoidance programs," *id.* ¶ 16, and (3) Defendants' representative, Josh, told Daou that BoA does not foreclose when a loan modification is under review, *id.* ¶ 19. However, these statements do not demonstrate that Defendants unequivocally intended to waive their rights to accelerate or foreclose – they merely show that Defendants told Daou that Defendants would postpone the foreclosure sale while they considered him for various modification programs. Moreover, the deed of trust states,

> [A]ny forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entitles or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

ORDER – PAGE 18

Defs.' App. to Defs.' Mot. Dismiss, Deed of Trust, p. 10.  Accordingly, Daou's waiver

argument also fails.

     ***4. The Statute of Frauds Bars Daou's Unilateral Contract Theory.*** – Finally, Daou

claims that Defendants' oral promises and his reliance on them – alleged promises that (1)

he qualified for a modification and (2) Defendants do not foreclose while a loan modification

is under review – constitute a unilateral contract, which Defendants breached when they

posted his property for foreclosure.  Pl.'s First Am. Compl. ¶ 23.

     However, as this Court has explained, the Texas Statute of Frauds, TEX. BUS. & COM.

CODE § 26.02(b), bars Daou's claim:

> "Texas law does not recognize the validity of oral loan modification
> agreements in these circumstances."  *Water Dynamics*, [*Ltd. v. HSBC Bank
> USA Nat'l Ass'n*,] 2012 WL 34252, at *4 [(N.D. Tex. 2012) (McBryde, J.)].
> Rather, a "loan agreement exceeding $50,000 in value must be in writing."  *Id.*
> (citing TEX. BUS. & COM. CODE ANN. § 26.02(b) (West 2012)).  As this Court
> has noted, "[a] 'loan agreement' includes any promise, agreement,
> understanding, or commitment pursuant to which any financial institution
> delays repayment of money or otherwise make[s] a financial accommodation."
> *Id.* (citing TEX. BUS. COM. CODE ANN. § 26.02(b)).  Therefore, "any agreement
> to modify the deed of trust and reduce payments on the note must be in
> writing."  *Id.*  Because [plaintiff] acknowledges in her amended complaint that
> her alleged unilateral contract is not in writing, her claims for breach and
> anticipatory breach of the unilateral contract fail.

*Obuekwe*, 2012 WL 1388017, at *5; *see also, e.g.*, *Edwards v. Ocwen Loan Servs., LLC*,

2012 WL 844396, at *7 (E.D. Tex. 2012) (explaining that statute of frauds rendered

plaintiff's alleged oral loan modification promise unenforceable); *Kazmi v. BAC Home Loans

Servicing, L.P.*, 2012 WL 629440, at *8-9 (E.D. Tex. 2012) (same); *Watson v. Citimortgage,

Inc.* ("*Watson I*"), 814 F. Supp. 2d 726, 732-33 (E.D. Tex. 2011) (same).

Nonetheless, in his response, Daou argues that the promissory estoppel and partial-performance exceptions to the statute of frauds apply. Pl.'s Resp. 8-10. "Texas courts have not clearly stated whether traditional equitable exceptions to the statute of frauds are applicable to § 26.02." *Edwards*, 2012 WL 844396, at *7. However, "[t]o evoke promissory estoppel, the promisee must show that the promisor promised to sign a written agreement that complied with the statute of frauds." *Hurd v. BAC Home Loans Servicing, LP*, 2012 WL 1081994, at * (N.D. Tex. 2012) (Ramirez, Mag. J.) (quoting *Schuhart v. Chase Home Fin., L.L.C.*, 2006 WL 1897263, at *4 (S.D. Tex. 2006)). Daou "has not alleged that Defendants promised to reduce the oral unilateral contract to writing" here.[17] *Obuekwe*, 2012 WL 1388017, at *5 n.4 (citing *Ford v. City Bank of Palacios*, 44 S.W.3d 121, 139 (Tex. App. – Corpus Christi 2011, no pet.)). Accordingly, he cannot avail himself of the promissory-estoppel exception to the statute of frauds.

The partial-performance exception to the statute of frauds likewise does not apply. Daou argues that he took the "action" of applying for a loan modification in reliance on Defendants' representations. Pl.'s Resp. 9. "But [t]he acts of performance relied upon to take a parol contract out of the statute of frauds must be such as could have been done with

---

[17]Daou claims that *he* reduced the contract to writing. Pl.'s Br. Supp. of Pl.'s Resp. 10 [16-1] [hereinafter Pl.'s Resp.] ("[A]fter speaking to a BOA representative about the loan modification and that BOA does not foreclose during the loan modification process, [Daou] memorialized their oral agreement into a writing and submitted it to BOA, with instructions that if the letter does not reflect their agreement BOA needed to contact [Daou]."). But Defendants never signed his writing, nor does Daou allege that Defendants ever promised that they would sign the writing. *Id.* ("BOA did not contact [Daou]."); *cf.* Pl.'s First Am. Compl. ¶ 19 ("Josh told [Daou] to fax the additional *financial* information to BOA . . ." (emphasis added)).

no other design than to fulfill the particular agreement sought to be enforced." *Obuekwe*, 2012 WL 1388017, at *5 n.4 (quoting *Exxon v. Breezevale Ltd.*, 82 S.W.3d 429, 441 (Tex. App. – Dall. 2002, no pet.)).  It is clear from Daou's complaint that he was in the process of applying for a loan modification before he alleges that Defendants' representative, Josh, told Daou that he qualified for a modification.  Pl.'s First Am. Compl. ¶¶ 12-19, 23.  Indeed, Daou's conversation with Josh occurred after Daou applied for HAMP and learned that he did not qualify but that Defendants were considering him for other modification options.  *Id.* ¶¶ 16-19.  Because Daou did not actually apply for a loan modification in reliance on Defendants' statements, Daou fails to allege partial-performance.[18]

### C. Daou Fails to State a Claim for Anticipatory Breach of Contract

Under the same heading as his breach of contract claim, Daou alleges that Defendants committed an anticipatory breach of contract.  Pl.'s First Am. Compl. ¶¶ 22-26.  To prevail on this claim under Texas law, Daou must show that (1) Defendants absolutely repudiated an obligation, (2) Defendants lacked a just excuse for this repudiation, and (3) he suffered damage.  *Gonzalez v. Denning*, 394 F.3d 388, 394 (5th Cir. 2004) (citing *Taylor Pub. Co. v. Sys. Mktg. Inc.*, 686 S.W.2d 213, 217 (Tex. App. – Dall. 1984, writ ref'd n.r.e.)); *see also, e.g.*, *Swim v. Bank of Am., N.A.*, 2012 WL 170758, at *4 (N.D. Tex. 2012) (Lynn, J.); *Watson II*, 2012 WL 381205, at *5.  "An anticipatory repudiation of a contract may be based on either words or actions by a party that indicate an intention not to perform the contract

---

[18]The Court doubts that Daou's "action" of applying for a loan modification would qualify as partial performance under the alleged unilateral contract, though it need not analyze the issue.

according to its terms." *Swim*, 2012 WL 170758, at *4 (citing *Builders Sand, Inc. v. Turtur*, 678 S.W.2d 115, 120 (Tex. App. – Hous. [14th Dist.] 1984, no writ)). The party's declaration of intent to abandon its obligations under the contract must be positive and unconditional – that is, the party committing an anticipatory breach must recognize its duties but refuse to perform them. *Id.* (citing *Preston v. Love*, 240 S.W.2d 486, 487 (Tex. App. – Austin 1951, no writ)); *Watson II*, 2012 WL 381205, at *5 (citing *Preston*, 240 S.W.2d at 487 and *Continental Cas. Co. v. Boerger*, 389 S.W.2d 566, 568 (Tex. App. – Waco 1965, writ dism'd)).

Daou's claim for anticipatory breach is difficult to understand, but he clarifies in his response that Defendants repudiated the contract by attempting to foreclose on the property despite continually representing that Defendants would not foreclose during the loan modification process. Pl.'s Resp. 7. Though the Court does not see how "attempting to foreclose" is a repudiation, to the extent that Daou claims that Defendants' conduct with regard to the modification constituted an anticipatory breach, the Court finds that Defendants' conduct "at worst [demonstrates that] Defendants gave conflicting messages to Plaintiffs." *Swim*, 2012 WL 170758, at *5. But "[s]uch inconsistencies fall quite short of the 'positive and unconditional' repudiation that is necessary to establish a claim for anticipatory breach of contract." *Watson II*, 2012 WL 381205, at *5 (citation omitted). Accordingly, Daou's anticipatory breach claim fails.

### D. Daou Fails to State a Claim For Unreasonable Collection Efforts

Daou claims that Defendants committed the tort of unreasonable collection efforts, alleging that Defendants "failed to give [Daou] a chance to reinstate or cure the default," "intentionally mislead and delayed [Daou] to the point of foreclosure," and "assessed late charges and penalties, improperly placed the property in foreclosure, and imposed numerous additional charges upon [Daou's] mortgage loan account."  Pl.'s First Am. Compl. ¶ 29. Daou alleges that this conduct caused him extreme emotional distress and mental anguish and slandered and defamed his credit reputation.  *Id.*

In Texas, "[u]nreasonable collection is an intentional tort."  *EMC Mortg. Corp. v. Jones*, 252 S.W.3d 857, 868 (Tex. App. – Dall. 2008, no pet.).  "To recover on this claim, Plaintiffs must prove that Defendants' debt collection efforts 'amount to a course of harassment that was willful, malicious, and intended to inflict mental anguish and bodily harm.'"  *Kazmi*, 2012 WL 629440, at *11 (citing *EMC Mortg. Corp.*, 252 S.W.3d at 868). Courts consider the reasonableness of a defendant's conduct on a case-by-case basis.  *Id.* (citation omitted); *see also, e.g.*, *Obuekwe*, 2012 WL1388017, at *6.  "Generally, 'mental anguish damages alone will not establish a right of recovery; the plaintiff must suffer some physical or other actual damages in order to be entitled to relief."  *Kazmi*, 2012 WL 629440, at *11 (quoting *B.F. Jackson, Inc. v. CoStar Realty Info., Inc.*, 2009 WL 1812922, at *5 (S.D. Tex. 2009)); *see also, e.g.*, *McDonald v. Bennett*, 674 F.2d 1080, 1088 (5th Cir. 1982).  And "[w]here a debt is owed to a lender, a claim for unreasonable collection cannot survive when the lender simply tries to recover the debt owed."  *Woods*, 2012 WL 1344343, at *8; *see also,*

ORDER – PAGE 23

*e.g.*, *DeFranseschi v. Wells Fargo Bank, N.A.*, 2011 WL 3875338, at *11 (N.D. Tex. 2011) (Means, J.) (citing *Narvaez*, 757 F. Supp. 2d at 635).

Daou alleges no facts suggesting that Defendants' conduct was willful or malicious,[19] let alone that Defendants intended to inflict mental anguish and bodily harm in collecting his debt. Accordingly, Daou's allegations "fall well short of conduct constituting wilful, wanton, and malicious harassment."[20] *Woods*, 2012 WL 1344343, at *8 (finding that defendants' alleged "failure to provide notice, failure to communicate, conversations related to potential loan modification, and additional charges and penalties placed on Plaintiff's account" fell "well short" of unreasonable collection efforts standard).[21]

### E. Daou Successfully States Only One Claim Under DCPA

Daou claims that Defendants violated DCPA by misrepresenting the amounts Daou owed on the mortgage loan, wrongfully accelerating and posting his property for foreclosure, imposing wrongful charges on Daou's mortgage account, and failing to allow Daou to pay the arrearage, thereby misrepresenting the extent of his debt. Pl.s' First Am. Compl. ¶ 37-38.

---

[19]Daou attempts to plead a claim for "malice" to obtain exemplary damages. Pl.'s First Am. Compl. ¶ 33. However, exemplary damages are a remedy, and the Court does not address Daou's "malice" claim as a cause of action.

[20]Indeed, the crux of Daou's complaint seems to be that it was difficult to deal with Defendants.

[21]Though Defendants' conduct in allegedly imposing additional charges may be negligent at most, it does not rise to the level of willfulness or maliciousness. *See Woods*, 2012 WL 1344343, at *8 (finding almost identical claims to be negligent at most); *DeFranceschi*, 2011 WL 3875338, at *11 (same); *cf. Watson II*, 2012 WL 381205, at *7 (refusing to adopt a negligence standard for unreasonable collection efforts and noting that the most widely-accepted definition in Texas courts requires malicious intent).

At the outset, the Court notes that attempted or actual foreclosure can violate DCPA. *See, e.g.*, *Rey*, 860 S.W.2d at 659 ("[W]rongful acceleration of a real estate note . . . violates [DCPA] . . . as a matter of law." (citation omitted)); *Swim*, 2012 WL 170758, at *5 (collecting cases); *Wilkerson*, 2011 WL 6937382, at *5-6; *Biggers v. BAC Home Loans Servicing, LP*, 767 F. Supp. 2d 725, 732 (N.D. Tex. 2011) (Fitzwater, C.J.) ("Based on the statutory definitions and the status of Texas case law, the court makes an *Erie*-guess that DCPA can apply to actions taken in foreclosing on real property."). However, Daou sufficiently pleads only his section 392.304(a)(19) DCPA claim.

Section 392.301(a)(8) of DCPA prohibits a debt collector from using "threats, coercion, or attempts to coerce[,] . . . [including] threatening to take an action prohibited by law." TEX. FIN. CODE § 392.301(a)(8). Daou alleges that Defendants' failed to allow him to pay his arrearage in violation of the deed, Pl.'s First Am. Compl. ¶ 38, and therefore Defendants' subsequent attempted foreclosure violated the Texas Finance Code, Pl.'s Resp. 20. However, Daou's complaint fails to identify threats, coercion, or attempts to coerce with regard to the notices or foreclosure. As this Court has noted,

> A "threat" is defined as "a communicated intent to inflict harm or loss on another or another's property." BLACK'S LAW DICTIONARY 1618 (9th ed. 2009). "Coercion" is defined as "compulsion by physical force or threat of physical force." *Id.* at 294. Defendants' alleged actions and communications in the course of loan negotiations simply do not rise to the level of threats or coercion to be considered actionable under the statute.

*Woods*, 2012 WL 1344343, at *6. And the statute "does not prevent a debt collector from exercising or threatening to exercise a statutory or contractual right of seizure, repossession, or sale that does not require court proceedings," TEX. FIN. CODE § 392.301(b)(3), such as

foreclosing under the loan agreement, *Woods*, 2012 WL 1344343, at *6; *Swim*, 2012 WL 170758, at *5.  Thus, the Court dismisses Daou's section 392.301(a)(8) claim.

Under section 392.303(a)(2), "a debt collector may not use unfair or unconscionable means . . .[to] collect[] or attempt[] to collect interest or a charge, fee, or expense incidental to the obligation unless the interest or incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer."  TEX. FIN. CODE § 392.303(a)(2).  In his complaint, Daou states that "through [their] communications and demands, Defendants . . . imposed wrongful charges (i.e., penalties, attorney fees, corporate advances) on [Daou's] mortgage account[,] thus using a deceptive means to collect a debt."  Pl.'s First Am. Compl. ¶ 38.  "However, under the terms of the statute, a debt collector may charge additional fees if the parties have agreed to permit such charges under the contract."  *McDonald v. Deutsche Bank*, 2012 WL 2122168, at *7.  Both the note and deed of trust authorize Defendants to charge various costs and expenses, including attorneys' fees and late fees, as a matter of course and in the event of a default.  *See* Defs.' App. to Defs.' Mot. Dismiss, Note, pp. 1-2; Defs.' App. to Defs.' Mot. Dismiss, Deed of Trust, pp. 5-12.  Daou provides no factual support in his complaint regarding how the charges, which may be authorized under the note and deed, were "wrongful," and the Court therefore cannot ascertain that he has stated a claim under section 392.303(a)(2).  Thus, the Court also dismisses Daou's section 392.303(a)(2) claim.

Section 392.304(a)(8) provides that, "in debt collection or obtaining information concerning a consumer, a debt collector may not use a fraudulent, deceptive, or misleading

ORDER – PAGE 26

representation that . . . misrepresent[s] the character, extent, or amount of a consumer debt, or misrepresent[s] the consumer debt's status in a judicial or governmental proceeding." TEX. FIN. CODE § 392.304(a)(8). Daou alleges that, "[b]ecause Defendants failed to allow [Daou] to pay the arrearage, as authorized by the Deed of Trust, but instead demanded the entire amount of the loan, [they] misrepresented the extent of the debt to [Daou]." Pl.'s First Am. Compl. ¶ 38. Daou is correct that the deed of trust allows a borrower to cure the default by paying any arrearage, or default, before the date specified in a notice of acceleration. *See* Defs.' App. to Defs.' Mot. Dismiss, Deed of Trust, pp. 12. Accordingly, the amount of Daou's debt would be different – as it would be either the default amount or the entire indebtedness – depending on the date upon which Daou were to attempt to tender payment. However, again, Daou does not provide enough facts for the Court to ascertain whether he states a claim. Daou does not allege that Defendants demanded the entire amount due before the date specified in a notice of acceleration.[22] Accordingly, the Court dismisses Daou's section 392.304(a)(8) claim.[23]

Daou's section 392.304(a)(19) claim fares better. Pursuant to section 392.304(a)(19), DCPA's "catchall provision," *e.g.*, *Woods*, 2012 WL 1344343, at *7, a debt collector may

---

[22]The notice of acceleration was presumably the "letter" from Recontrust dated August 24, 2011. *See* Pl.'s First Am. Compl. ¶ 18.

[23]Again, though the Court cannot consider the document on Defendants' motion to dismiss, the Court notes that Defendants attached a notice of acceleration and trustee's sale to their motion to dismiss, dated October 18, 2010, which advised Daou that he had until November 17, 2010 to cure his default or BoA would accelerate his indebtedness. *See* Defs.' App. to Defs.' Mot. Dismiss, Notice of Default, pp. 18-22.

not "us[e] any other false representation or deceptive means to collect a debt or obtain information concerning a consumer," TEX. FIN. CODE § 392.304(a)(19).  "In order for a statement by a party to constitute a misrepresentation under DCPA, Defendant must have made a false or misleading assertion."  *Sanghera v. Wells Fargo Bank, N.A.*, 2012 WL 555155, at *9 (N.D. Tex. 2012) (Boyle, J.) (citing *Narvaez*, 757 F. Supp. 2d at 632).  Many courts, including this one, have found that plaintiffs successfully state a claim under section 392.304(a)(19) where they allege that a defendant made affirmative statements that it would not foreclose on the property during loan modification discussions.  *See, e.g.*, *Obuekwe*, 2012 WL 1388017, at *7; *Woods*, 2012 WL 1344343, at *7; *Swim*, 2012 WL 170758, at *6. Similarly, Daou alleges that "Defendants represented that [Daou] was approved for a loan modification," Pl.'s Pet. ¶ 38, and that Defendants do not foreclose while a modification is under review, *id.* ¶ 19.  Thus, in step with other decisions of this Court, the Court denies Defendants' motion to dismiss Plaintiffs' section 392.304(a)(19) claim.

### F. Daou Fails to State a Claim for Negligent Misrepresentation

Daou alleges that Defendants made misrepresentations regarding the status of "his mortgage account and a foreclosure sale," Pl.'s First Am. Compl. ¶ 43, by "telling [Daou] that he qualified for a loan modification, that they do not foreclose while a loan modification is under review, and that [Daou] should ignore the foreclosure notices," *id.* ¶ 44.

To establish a negligent misrepresentation claim in Texas, Daou must show that:

(1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or

communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation.

*Federal Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991); *see also Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 686 n.24 (Tex. 2002). "[A] negligent misrepresentation claim must allege misstatement of an 'existing fact,'" *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 314 (5th Cir. 2007); *see also, e.g.*, *NY Life Ins. v. Miller*, 114 S.W.2d 114, 124 (Tex. App. – Austin 2003, no pet.), rather than a promise of future conduct, *Miller*, 114 S.W.2d at 124. That is, a defendant's "promise to do or refrain from doing an act in the future is not actionable because it does not concern an existing fact." *BCY Water Supply Corp. v. Residential Inv., Inc.*, 170 S.W.3d 596, 603 (Tex. App. – Tyler 2005, no pet.). Accordingly, forward-looking statements about a plaintiff's application for modification, or that a defendant will or will not foreclose, fail to state a claim for negligent misrepresentation. *E.g.*, *Edwards*, 2012 WL 844396, at *6; *Eskridge v. Fed. Home Loan Corp.*, 2011 WL 2163989, at *3 (W.D. Tex. 2011).

It is somewhat unclear from Daou's complaint whether Defendants' alleged misrepresentation – that they do not foreclose while a loan modification is under review – is a forward-looking statement or a statement of present fact. Regardless, Daou's negligent misrepresentation claim fails because he pleads only conclusory statements with regard to his alleged pecuniary loss, which do not suffice under *Twombly*. Daou states that "[t]he representations by Defendants involved a transaction to which Defendants have a pecuniary interest" and that Defendants' conduct "caused [Daou] to sustain damages, including but not

limited to court costs, actual damages and exemplary damages." Pl.s' First Am. Compl. ¶ 45. Daou does not allege any discernable pecuniary loss or expound on these conclusions.

Furthermore, "[t]o recover damages for negligent misrepresentation, Daou's damages must be separate from his damages for breach of contract." *Swim*, 2012 WL 170758, at *7 (citing *Sloane*, 825 S.W.2d at 442 and RESTATEMENT (SECOND) OF TORTS § 552B (1977)). However, "[Daou] do[es] not plead what actual damages [he] seeks, separate from [his] claims for breach of contract, for the alleged negligent misrepresentation." *Swim*, 2012 WL 170758, at *7. Accordingly, the Court dismisses Daou's negligent misrepresentation claim.

### G. Daou Is Not Entitled to An Accounting

Daou's complaint contains one line under his "accounting" claim: "Plaintiff requests an Order for accounting of all transactions on his mortgage loan. Pl.'s First Am. Compl. ¶ 41. The Eastern District of Texas recently encountered this exact pleading. *See Watson I*, 814 F. Supp. 2d at 737. It explained:

> "An action for accounting may be a suit in equity, or it may be a particular remedy sought in conjunction with another cause of action." *Brown v. Cooley Enters., Inc.*, No. 3:11–cv–0124–D, 2011 WL 2200605, at *1 (N.D. Tex. June 7, 2011) (quoting *Michael v. Dyke*, 41 S.W.3d 746, 754 (Tex. App. – 2001, no pet.)). Because Plaintiffs have made no more than an assertion of a right to an accounting, the court is left to determine whether Plaintiffs seek an accounting as a suit in equity or as a remedy. If Plaintiffs' request for an accounting is a remedy sought rather than a cause of action, the determination of whether an accounting would be an appropriate remedy must await the determination of the liability issues. *Shields v. Ameriquest Mortg. Co.*, No. 05–06–01647–CV, 2007 WL 3317533, at *2 (Tex. App. – Dallas 2007, no pet.). Only if this case goes to trial and it is determined that the Plaintiffs are owed damages would the issue of accounting as a remedy arise. *Id.*
>
> If Plaintiffs' request for an accounting is a separate, equitable cause of action, it is a proper action "when the facts and accounts in issue are so complex that adequate relief cannot be obtained by law." *Brown*, 2011 WL

2200605, at *1 (citing *Hutchings v. Chevron USA, Inc.*, 862 S.W.2d 752, 762 (Tex. App. – El Paso 1993, writ denied)). But "[w]hen a party can obtain adequate relief at law through the use of standard discovery procedures, such as requests for production and interrogatories, a trial court does not err in not ordering an accounting." *T.F.W. Mgmt., Inc. v. Westwood Shores Prop. Owners Ass'n*, 79 S.W.3d 712, 717–18 (Tex. App. – Houston [14th] 2002, pet. denied).

*Id.* at 737-38. Here, Daou lists "accounting" as one of his causes of action – interspersed with the other causes of action in his complaint. Accordingly, the Court interprets Daou's request for an accounting as a separate, equitable cause of action.[24] And, as in *Watson I*, "[Daou's] bare assertion that [he] [is] entitled to accounting does not meet the standard of plausibility because [he] ha[s] not alleged that [he] [is] unable to attain pertinent information through ordinary discovery procedures." *Id.* at 738. The Court therefore dismisses Daou's request for an accounting.

## H. Daou Is Not Entitled to A Declaratory Judgment

Daou's declaratory judgment request likewise fails. The Declaratory Judgment Act is a procedural device; it creates no substantive rights and requires the existence of a justiciable controversy. *Lowe v. Ingalls Shipbldg.*, 723 F.2d 1173, 1179 (5th Cir.1984); *see Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239-41 (1937). "Thus, the Act provides no

---

[24]In the "Prayer" section of his complaint, Daou requests the Court to order Defendants "to render an accounting to [Daou] of the amounts paid and owed pursuant to [RESPA] (12 U.S.C. Section 2605(e))." Pl.'s First Am. Compl, "Prayer," p. 17. However the Court need not address Daou's request for accounting as a remedy here. *Watson I*, 814 F. Supp. 2d at 737 ("If Plaintiffs' request for an accounting is a remedy sought rather than a cause of action, the determination of whether an accounting would be an appropriate remedy must await the determination of the liability issues. . . . Only if this case goes to trial and it is determined that the Plaintiffs are owed damages would the issue of accounting as a remedy arise." (citing *Shields*, 2007 WL 3317533, at *2)).

relief unless there is a justiciable controversy between the parties." *Kazmi*, 2012 WL 629440, at *15.  As the Fifth Circuit has explained:

> In order to demonstrate that a case or controversy exists to meet the Article III standing requirement when a plaintiff is seeking injunctive or declaratory relief, a plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future.  Based on the facts alleged, there must be a substantial and continuing controversy between two adverse parties.  The plaintiff must allege facts from which the continuation of the dispute may be reasonably inferred.  Additionally, the continuing controversy may not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury.
>
> Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.  To obtain equitable relief for past wrongs, a plaintiff must demonstrate either continuing harm or a real and immediate threat of repeated injury in the future.  Similar reasoning has been applied to suits for declaratory judgments.

*Bauer v. Tex.*, 341 F.3d 352, 358 (5th Cir.2003) (citations and quotations omitted).  Federal courts have broad discretion to grant or refuse a request for declaratory judgment.  *Kazmi*, 2012 WL 629440, at *14 (citing *Torch, Inc. v. LeBlanc*, 947 F.2d 193, 194 (5th Cir. 1991)).

Daou seeks a declaratory judgment construing the deed of trust and "find[ing] that [Daou] has not materially breached the Deed of Trust contract on the property, that Defendants had no standing, or waived their right to foreclose, and that Defendants' wrongfully attempted to foreclose on [Daou's] property."  Pl.'s First Am. Compl. ¶ 50.  However, the Court dismisses Daou's claims for breach of contract, and thus there is no actual controversy between the parties regarding this claim.[25]  And there is no "attempted

---

[25]The Court interprets Daou's request that it find "that the lien is invalid" and "that Defendants ha[ve] no standing to foreclose," Pl.'s First Am. Compl. ¶ 50, to be part of his

ORDER – PAGE 32

wrongful foreclosure" claim in Texas to support Daou's request for declaratory relief on that ground. *See Port City State Bank v. Leyco Constr. Co.*, 561 S.W.2d 546, 547 (Tex. App. – Beaumount 1977, no writ) ("But, plaintiff has cited to us no authority supporting the existence of a cause of action for 'attempted wrongful foreclosure' and our research has not developed authorities showing the existence of any such cause of action."); *see also, e.g.*, *Anderson v. Baxter, Schwartz & Shapiro, LLP*, 2012 WL 50622, at *4 (Tex. App. – Hous. [14th Dist.] 2012, no pet.) (attempted wrongful foreclosure not a cause of action in Texas); *Owens v. BAC Home Loans Servicing, L.P.*, 2011 WL 1494231, at *3 (S.D. Tex. 2011) (stating that district courts in the Fifth Circuit applying Texas law "have consistently held that attempted wrongful foreclosure claims . . . are not cognizable" and collecting cases). Accordingly, the Court refuses Daou's request that it issue a declaratory judgment.

## CONCLUSION

The Court denies Daou's motion to remand because Daou's petition meets the diversity requirements for the Court to exercise jurisdiction. The Court grants in part and denies in part Defendants' motion to dismiss. Daou fails to state a claim for breach of contract; anticipatory breach of contract; unreasonable collection efforts; certain violations of DCPA; negligent misrepresentation; an order of accounting; or a declaratory judgment,

---

breach of contract request – that is, Daou asks the Court to declare the lien invalid because Defendants allegedly breached the deed of trust.

and the Court dismisses those claims.[26]   However, Daou states a claim under section 392.304(a)(19) of DCPA, and the Court does not dismiss this claim.


      Signed July 31, 2012.

_____
David C. Godbey
United States District Judge

---

[26]Daou has previously amended his complaint in response to a motion to dismiss. However, Daou may request leave to make specific amendments to his complaint to respond to the deficiencies found in this Order if he is able to make the requisite showing of good cause.


ORDER – PAGE 34